IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JOHNNY LEE WEAVER,        )
                      )
        Petitioner,       )
                      )
    v.                   )       CV 119-142
                      )     (Formerly CR 114-030)
UNITED STATES OF AMERICA,  )
                      )
        Respondent.     )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Petitioner Johnny Lee Weaver filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, as well as a motion to expand the record and a motion to amend his original § 2255 motion. Respondent moves to dismiss the original § 2255 motion. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion to expand the record be **GRANTED**, (doc. no. 12), the motions to amend and for leave to file an additional reply brief in support of amendment be **DENIED**, (doc. nos. 15, 18), the motion to dismiss be **GRANTED**, (doc. no. 8), the § 2255 motion be **DISMISSED** without appointing counsel, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

    A.    **Pretrial Proceedings**

        1.    **Indictment and Penalty Certification**

In an indictment returned on March 5, 2014, a grand jury in the Southern District of Georgia charged Petitioner, and variously two co-defendants, in a five count indictment as

follows:  Count One, conspiracy to rob a commercial business, in violation of 18 U.S.C. § 1951; Count Two, conspiracy to use firearms during violent crimes, in violation of 18 U.S.C. § 924(o); Count Three, robbery of a commercial business, in violation of 18 U.S.C. § 1951; Count Four, using, carrying, and brandishing a firearm during a crime of violence as charged in Count Three, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and Count Five, possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e)(1).  United States v. Weaver, CR 114-030, doc. no. 1 (S.D. Ga. Mar. 5, 2014) (hereinafter "CR 114-030").

Counts One, Two, and Three each carried a possible prison sentence of not more than twenty years.  Id., doc. no. 2.  Count Four carried a possible prison term of not less than seven years if brandished, consecutive to any other sentence imposed.  Id. at 2.  Count Five  carried a possible prison term of not less than fifteen years nor more than life.  Id.  The Court appointed attorney David M. Stewart to represent Petitioner.  Id., doc. no. 37.

Both of Petitioner's co-defendants entered agreements with the government to plead guilty, (id., doc. nos. 43-45, 52, 62-63), and Chief United States District Judge J. Randal Hall set Petitioner's jury trial for July 14, 2014.  Id., doc. no. 51.  Prior to trial, Petitioner and the government stipulated to several facts, including that Petitioner was a convicted felon on the date he was charged with illegally possessing firearms and that the firearms listed in the indictment had been shipped and transported in interstate or foreign commerce before the date possession was alleged.  Id., doc. nos. 68, 69.

**B.     Trial**

The facts developed at trial showed the following:

> [Petitioner], along with Jaron Wallace and Saintwain Roberts, robbed a Family Dollar store in Augusta, Georgia.  Two of the men robbed the store, with a third driving a getaway car.  Driving away from the laundromat next door, Denise Murray and her son, Kendrick Murray, saw the robbers exit the Family Dollar.  One of the men wore a camouflage jacket, pants, and hat. Denise Murray

2

testified that the man in camouflage looked at her twice, "like he was trying to figure out why we was trailing beside them as they ran."

Two police officers arrived at the scene shortly after the robbery. Kendrick Murray described to the police the robbers' black car and the direction in which it was heading. The police chased the car, reaching speeds in excess of 100 miles per hour. When the car pulled into a convenience store parking lot, three men jumped out of the car and fled on foot. The police arrested two of the men—Roberts and Wallace—but not the third.

The police discovered that the car contained items stolen from the Family Dollar, a handgun, and a camouflage jacket and hat. The car, the handgun, and the camouflage clothing belonged to a friend with whom [Petitioner] was staying. The police also found [Petitioner's] fingerprint on the car's front passenger window.

United States v. Weaver, 760 F. App'x 745, 747-48 (11th Cir. 2019) (*per curiam*). Over objection, the government introduced evidence at trial that Petitioner had been identified as the third robber from a photo lineup by Denise Murray and Petitioner's two co-defendants; Ms. Murray identified Petitioner "in court as the man wearing camouflage who had run out of the Family Dollar Store." Id. at 748.

At the end of the three-day trial that included fifteen witnesses and more than sixty exhibits, the jury deliberated approximately forty-eight minutes before finding Petitioner guilty of all five counts of the indictment. CR 114-030, doc. no. 137 (Trial Tr.), pp. 1-4, 441, 443-44.

### C. Sentencing

The United States Probation Office prepared the Presentence Investigation Report (PSI) using the November 1, 2014 Guidelines Manual. PSI ¶ 15. After extensive discussion at the sentencing hearing regarding Petitioner's status as a career offender and armed career criminal, (CR 114-030, doc. no. 138 (Sent. Tr.), pp. 22-27), the PSI was modified to reflect resolution of the objections on Petitioner's dual status and Judge Hall's determination Petitioner had

"sufficient qualifying convictions to trigger the application of the career offender and the armed career criminal enhancement." Id. at 27.   In the course of determining Petitioner qualified as both a career offender and armed career criminal, the Probation Officer explained, and Judge Hall agreed, in addition to the three predicate offense specifically delineated as supporting the enhancement, Petitioner had four other convictions that qualified as predicate offenses.   Id. at 26-27.   The three Florida convictions counted against Petitioner were aggravated battery, armed robbery, and strong-arm robbery.   Id. at 25; PSI ¶¶ 47, 48, 50.   The convictions that also would have been qualifying predicate convictions for an armed career criminal included:   aggravated battery on a police officer and battery on a school board employee, delivery with intent to distribute cocaine, strong-arm robbery, and burglary of an unoccupied dwelling.   PSI ¶¶ 40, 41, 44, 46.

Thus, the PSI as adopted by Judge Hall set a Total Offense level of thirty-three, a Criminal History Category of VI, and a Guidelines imprisonment range of 235 to 293 months as to Count One, but because of the mandatory, consecutive eighty-four month sentence required by conviction on Count Four, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), the effective Guidelines imprisonment range was 319 to 377 months.   PSI ¶ 75.   Because of Petitioner's designation as a career offender and his Count Four, § 924(c) conviction, the Guidelines range ultimately became 360 months to life.   Id.   The minimum statutory sentence permitted under the verdict was 264 months because conviction on the § 924(c) charge in Count Four required an eighty-four-month mandatory minimum sentence to be served consecutive to the felon in possession conviction on Count Five carrying a 180-month mandatory minimum sentence. PSI ¶¶ 74, 75.   These mandatory minimum sentences were exclusive of the maximum twenty-year terms on each conviction for Counts One through Three.   PSI ¶ 74.

4

After hearing from counsel and Petitioner, Judge Hall imposed the 360-month sentence, calculated as follows:  240 months each for Counts One through Three, and 276 months for Count Five, to be served concurrently but consecutive to the required eighty-four-month term on Count Four.  Sent. Tr. 41; CR 114-030, doc. no. 110.  As succinctly summarized by the Eleventh Circuit:

> The PSR explained that [Petitioner] was subject to enhancement as a career offender because he had three prior crimes of violence or serious drug offense convictions.  [Petitioner] objected to the enhancement.  At the sentencing hearing, the probation officer identified [Petitioner's] Florida convictions for aggravated battery in 1998, armed robbery in 1999, and strong-arm robbery in 2011 [PSI ¶¶ 47, 48, 50] as qualifying offenses for the career offender enhancement.  The district court overruled [Petitioner's] objection, finding that his prior convictions were sufficient to trigger the career offender enhancement.  After applying the enhancement, the district court found that [Petitioner's] guidelines range was 360 months to life imprisonment and ultimately sentenced him to a total of 360 months' imprisonment.

Weaver, 760 F. App'x at 748-49.

### D.     Direct Appeal

Petitioner argued Hobbs Act robbery could not serve as the underlying offense for the Count Four, § 924(c) conviction, and his prior Florida strong-arm robbery and aggravated battery convictions did not qualify as predicate offenses for purposes of the U.S.S.G. § 4B1.1 career offender enhancement.  Id. at 747.  While the appeal was pending, the Supreme Court decided in Johnson v. United States, 576 U.S. 591, 597 (2015), the residual clause in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague, and the Eleventh Circuit ordered supplement briefing, in which Petitioner argued he was entitled to be resentenced because the residual clause of the career offender enhancement, like the residual clause of the ACCA, was void for vagueness.  Weaver, 760 F. App'x at 749.  When the Supreme Court held the Guidelines' residual clause in the career offender enhancement

was not void for vagueness, <u>Beckles v. United States</u>, 137 S. Ct. 886, 892 (U.S 2017), Petitioner switched tactics.  He requested remand for application of the modified categorical approach to determine whether his prior Florida convictions for strong-arm robbery and aggravated battery qualified as predicate offenses.  He also contended his Count Four conviction was invalid because the Hobbs Act robbery conviction did not qualify as a crime of violence under the elements clause of § 924(c) and that statute's residual clause was unconstitutionally vague.  <u>Weaver</u>, 760 F. App'x at 749.

The Eleventh Circuit affirmed Petitioner's convictions and sentence.  Petitioner's argument concerning Hobbs Act robbery not meeting the definition of a crime of violence under the elements clause of § 924(c) was foreclosed by circuit precedent, <u>United States v. St. Hubert</u>, 9090 F.3d 335, 346 (11th Cir. 2018).  At the time of the appeal, the argument concerning § 924(c)'s residual clause was also foreclosed by circuit precedent, <u>Ovalles v. United States</u>, 905 F.3d 1231, 1238 (11th Cir. 2018) (*en banc*).[1]  The Eleventh Circuit also rejected Petitioner's challenge to application of the career offender enhancement because under the version of the Guidelines in effect at the time of sentencing in 2014, the enhancement applied to any offense under federal or state law punishable by a term exceeding one year that "otherwise involved conduct that presented a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a); <u>see</u> U.S.S.G. § 4B1.1 cmt. n.1 (incorporating definition of "crime of violence" from U.S.S.G. § 4B1.2).  <u>Beckles</u>, *supra*, removed any argument that § 4B1.2(a) is void for vagueness.

---

[1] As discussed in detail in Part II(B)(3)(a), the United States Supreme Court later determined the residual clause of § 924(c) is unconstitutionally vague.  <u>United States v. Davis</u>, 139 S. Ct. 2319, 2324-25, 2336 (U.S. 2019).

Circuit precedent also dictated both the Florida convictions for aggravated battery and strong-arm violence categorically qualified as crimes of violence under the elements clause of the career offender guideline.  See Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1341 (11th Cir. 2013), *abrogated on other grounds*, Johnson, 576 U.S. 591; United States v. Golden, 854 F.3d 1256, 1256-57 (11th Cir. 2017) (reaffirming applicability of Turner to aggravated battery).  As to strong-arm robbery, the Eleventh Circuit recognized the Supreme Court was considering whether Florida strong-arm robbery qualifies as a violent felony under the elements clause, citing Stokeling v. United States, 138 S. Ct. 1438 (U.S. 2018).  But regardless of the Stokeling outcome, circuit "precedent still dictates that the offense qualifies as a crime of violence under the career offender's residual clause."  Weaver, 760 F. App'x at 755[2] (citing United States v. Lockley, 632 F.3d 1238, 1245 (11th Cir. 2011)).  Finding no merit in any appellate issue raised, the Eleventh Circuit affirmed the judgment of the district court. Id.

**E.  § 2255 Motion**

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims.

(1)  Petitioner's conviction for conspiracy to use firearms during violent crimes, Count Two, must be vacated in light of United States v. Davis, — U.S. —, 139 S. Ct. 2319 (U.S. 2019), (doc. no. 1, pp. 4, 18-19, 21-23).

(2)  Petitioner's conviction for using, carrying, and brandishing a firearm during a crime of violence, Count Four, must be vacated in light of United States v. Davis, *supra*, (doc. no. 1, pp. 5, 18-19, 23-24).

---

[2]As discussed in detail in Part II(B)(3)(c)(ii), the United States Supreme Court later determined a robbery conviction under Florida law categorically qualifies as a predicate violent felony under the elements clause of the ACCA.  Stokeling v. United States, 139 S. Ct. 2319, 2324-25, 2336 (U.S. 2019).

(3)    Petitioner's conviction for possession of a firearm by a convicted felon, Count Five, must be vacated because:

    (a)    the government was not required to prove the necessary mens rea element of the crime as set forth in <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (U.S. 2019), (doc. no. 1, pp. 7, 18, 20, 24-26; doc. no. 11, pp. 9-20); and

    (b)    Petitioner did not have the necessary three violent felony predicate convictions to support a sentence enhancement under 18 U.S.C. § 924(e), (doc. no. 1, pp. 7, 18, 20, 26).

(4)    Counsel provided ineffective assistance of counsel by:

    (a)    failing to object at sentencing to the enhancement applied under § 924(e), (doc. no. 1, pp. 8, 18, 20-21, 28-29);

    (b)    failing to appeal the § 924(e) sentence enhancement in light of <u>Stokeling v. United States</u>, 138 S. Ct. 1438 (U.S. 2018), (doc. no. 1, pp. 28-29); and

    (c)    failing to argue on appeal an improper jury instruction allowed the jury to return a guilty verdict for the § 924(c) charge in Count Four based on conspiracy to commit a crime rather than commission of a substantive crime, (doc. no. 1, p. 29; doc. no. 11, pp. 5-6, 7-9).

After Respondent's motion to dismiss had been fully briefed, Petitioner filed a motion to amend his § 2255 motion signed June 14, 2020, and docketed on June 18, requesting to add a new claim, in light of <u>United States v. Eason</u>, 953 F.3d 1184 (11th Cir. 2020). The government opposes the motion to amend. (Doc. no. 16.)

## II.    DISCUSSION

### A.    Petitioner Is Not Entitled to Appointed Counsel

As part of his § 2255 motion, Petitioner requests appointment of counsel. (Doc. no. 1, p. 29.) There is no automatic constitutional right to counsel in habeas proceedings. <u>See</u> <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987); <u>United States v. Webb</u>, 565 F.3d 789, 794

8

(11th Cir. 2009) (citing <u>Barbour v. Haley</u>, 471 F.3d 1222, 1227 (11th Cir. 2006)); <u>Hooks v. Wainwright</u>, 775 F.2d 1433, 1438 (11th Cir. 1985).  Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under 28 U.S.C. § 2255, but such requests are discretionary when "due process or the 'interests of justice'" so require. <u>Hooks</u>, 775 F.2d at 1438; <u>see also</u> 28 U.S.C. § 2255(g) and Rule 8(c) of the Rules Governing Section 2255 Cases in the United States District Courts (authorizing appointment of counsel pursuant to 18 U.S.C. § 3006A if evidentiary hearing warranted).  Moreover, appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]" <u>McCall v. Cook</u>, 495 F. App'x 29, 31 (11th Cir. 2012).  In sum, "[i]t is well established that indigents applying for federal or state post-conviction relief, even those sentenced to death, have no federal constitutional right to counsel except in those rare cases where under the circumstances the fundamental fairness component of due process requires appointment of counsel."  Donald E. Wilkes, Jr., <u>Federal Postconviction Remedies and Relief Handbook</u> § 2.2, at 191 (2017 ed.).

The Court does not find any exceptional circumstances justifying the appointment of counsel.  <u>McCall</u>, 495 F. App'x at 31.  Petitioner does not offer any basis for his request for appointed counsel.  However, Petitioner has had no problem communicating with the Court and presenting his argument for relief, as evidenced by his detailed § 2255 motion, briefing, and motion to amend which contain numerous legal citations and detailed facts.  Moreover, a hearing is not required because, as explained below, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." <u>Winthrop-Redin v. United States</u>, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  Accordingly, Petitioner's request for appointment of counsel should be denied.

**B.    Petitioner Procedurally Defaulted Grounds One, Two and Three, and In Any Event, They Have No Merit**

### 1.    Procedural Bar to § 2255 Review and the Exceptions

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel

10

when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions."  Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Actual innocence "applies to a severely confined category:  cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013).

### 2.    Grounds One, Two, and Three Are Procedurally Defaulted Because Petitioner Did Not Raise Them on Direct Appeal

In Ground One, Petitioner alleges his Count Two conviction for conspiracy to use firearms during a crime of violence, is invalid in light of Davis, 139 S. Ct. 2319, because it is based on conspiracy to commit Hobbs Act robbery.  In Ground Two, Petitioner alleges his § 924(c) conviction on Count Four is invalid because the Court instructed the jury about conspiracy to commit Hobbs Act robbery in addition to the substantive Hobbs Act robbery,

and there is no way to know the jury did not improperly convict him on the § 924(c) charge based on conspiracy, rather than properly based on the substantive charge.  In Ground Three, Petitioner alleges his felon in possession conviction must be vacated in light of Rehaif, 139 S. Ct. 2191, and moreover, his sentence is illegal because he did not have the necessary predicate violent felonies to enhance his sentence under the ACCA in light of Stokeling, 139 S. Ct. 544 (U.S. 2019).  As none of these claims were raised on direct appeal, they are barred from review in these collateral proceedings.

To avoid the bar to these claims, Petitioner must satisfy the cause and actual prejudice standard set forth above, or he must establish actual innocence.  He cannot satisfy any exception.  As to the claim concerning the Court's jury instruction, that claim was clearly available since the instruction was given at the time of trial.  Although ineffective assistance of counsel may serve as the necessary cause to address the merits of procedurally defaulted claim, Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010), as discussed in detail below, Petitioner has no valid ineffective assistance claim.  Importantly, appellate counsel is not deficient for failing to anticipate a change in the law.  Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1332, 1334 (11th Cir. 2016).

Pretermitting any argument Petitioner could not have made his arguments before the Supreme Court issued its decisions in Davis, Rehaif, or Stokeling in 2019, as explained above, that a claim was previously unacceptable to a court does not satisfy the cause requirement. Bousely, 523 U.S. at 623; Lynn, 365 F.3d at 1235.  Petitioner points to nothing that *prevented* him from raising what may have seemed at the time to be a losing argument.  After all, as a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place."  Prost v. Anderson, 636 F.3d 578, 592 n.11

(10th Cir. 2011) (Gorsuch, J.).  Indeed, successfully challenging circuit precedent all the way

to the Supreme Court is, in fact, the reward to litigants who "took the trouble to challenge

adverse circuit precedent."  Id.  at 590-91.  Moreover, as discussed in detail below, there is no

merit to the Davis, Rehaif, or Stokeling claims, and therefore Petitioner can show no prejudice.

Finally, these claims are not based on new reliable evidence that would satisfy the actual

innocence exception because the arguments are based on legal theory, not evidentiary facts.

Accordingly, the Davis, Rehaif, and Stokeling claims are procedurally defaulted.

> **3.  Even If Grounds One, Two, and Three Were Not Procedurally Defaulted, There Is No Merit to the Claims**
>
> **(a)  Davis Has No Impact on Petitioner's Conviction on Count Two for Conspiracy to Use Firearms During a Crime of Violence**

Section 924(c) requires imposition of a mandatory sentence for an individual convicted

of using or carrying a firearm "during and in relation to any crime of violence or drug

trafficking crime."  Sections 924(c)(3)(A) and (B) define "crime of violence" as an offense

that is a felony and:

> (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection A is commonly referred to as the "elements clause" and subsection B is known as

the "residual clause."  In re Pollard, 931 F.3d 1318, 1329 (11th Cir. 2019) (per curiam).

In Davis, the Supreme Court  "extended its holdings in Johnson v. United States, [576

U.S. 591], 135 S. Ct. 2551, 192 L.Ed.2d 569 (2015), and Sessions v. Dimaya, — U.S. —, 138

S. Ct. 1204, 200 L.Ed.2d 549 (2018), to § 924(c) and held that § 924(c)(3)(B)'s residual clause,

like the residual clauses in the Armed Career Criminal Act and 18 U.S.C. § 16(b), is unconstitutionally vague." In re Navarro, 931 F.3d 1298, 1301 (11th Cir. 2019) (*per curiam*) (citing Davis, 139 S. Ct. at 2324-25, 2336).  However, Davis left undisturbed the elements clause.  139 S. Ct. at 2323-36.  Therefore, if the predicate felony for a § 924(c) conviction qualifies as a crime of violence under the elements clause, that conviction is valid even after Davis.

Count Two charged Petitioner with conspiracy to commit an offense under § 924(c), but the predicate felony was specifically delineated as "armed robbery of a commercial business," which was the substantive Hobbs Act robbery charged in Count Three.  CR 114-030, doc. no. 1, p. 3.  In the Eleventh Circuit, Hobbs Act robbery "categorically qualifies as a crime of violence under § 924(c)'s elements clause."  United States v. White, 806 F. App'x 936, 937 (11th Cir. 2020) (*per curiam*) (citations omitted); United States v. Duhart, 803 F. App'x 267, 271 (11th Cir. 2020).  Petitioner argues conspiracy to commit Hobbs Act robbery, as was charged in Count One, does not qualify as a crime of violence that would support a conspiracy to commit a § 924(c) offense as charged in Count Two.  (Doc. no. 1, p. 21.)  That general principle is true.  See Brown v. United States, 942 F.3d 1069, 1076 (11th Cir. 2019) (*per curiam*).  However, because the predicate offense for the § 924(c) conspiracy charged in Count Two is specifically delineated as the armed robbery of a commercial business, the substantive Hobbs Act robbery charged in Count Three, Davis affords Petitioner no relief on his Count Two conviction.  See Duhart, 803 F. App'x at 271 (recognizing courts may "refer to a defendant's indictment, plea agreement, plea colloquy, and attendant factual proffer" when determining which predicate offenses underlie § 924(c) conviction).  Thus, Ground One of the § 2255 motion is without merit.

    **(b)**     <u>**Davis**</u> **Has No Impact on Petitioner's Conviction on Count Four for Using, Carry, and Brandishing a Firearm During a Crime of Violence**

In Ground Two of his § 2255 motion, Petitioner acknowledges the § 924(c) charge in Count Four was based on the substantive Hobbs Act robbery charged in Count Three.  (Doc. no. 1, p. 23.)  Nevertheless, he alleges he is entitled to relief under <u>Davis</u>, *supra*, because Judge Hall instructed the jury on conspiracy.  According to Petitioner, because conspiracy to commit Hobbs Act robbery cannot support the § 924(c) charge in Count Four, and the jury *may have* relied on the conspiracy, rather than substantive, Hobbs Act charge as the underlying crime of violence, <u>Davis</u> requires his Count Four conviction be vacated.  The Court disagrees.

The Court starts with the fundamental proposition that jurors will follow the instructions provided by the trial judge.  <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987); <u>see also United States v. Stone</u>, 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions.")  The presumption that jurors follow the trial court's instructions cannot be overcome unless there is an "overwhelming probability" jurors were unable to follow the instructions and a "strong likelihood" of a "devastating" effect to the defendant.  <u>Richardson</u>, 481 U.S. at 208; <u>Bruton v. United States</u>, 391 U.S. 123, 136 (1968); <u>Stone</u>, 9 F.3d at 938.

Moreover, in the Eleventh Circuit, district courts have "broad discretion in formulating a jury charge as long as the charge as a whole is a correct statement of the law." <u>LeCroy v. United States</u>, 739 F.3d 1297, 1322-23 (11th Cir. 2014) (citation omitted).  Deference is owed to the legal correctness of jury instructions unless there is a "substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." <u>United States v. Cooper</u>, 926 F.3d 718, 736 (11th Cir. 2019).  If a jury instruction accurately states the applicable law, "'there

is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism.'  Indeed, the Supreme Court has directed us that 'instructions must be evaluated not in isolation but in the context of the entire charge.'" United States v. Gonzalez, 834 F.3d 1206, 1222 (11th Cir. 2016) (citations omitted).

Here, the indictment charged Petitioner with conspiracies in Counts One and Two, and Judge Hall properly instructed the jury on the legal concept of conspiracy when he gave the Eleventh Circuit General Conspiracy pattern instruction.  Cf. CR 114-030, doc. no. 81, pp. 13-14 with Eleventh Circuit Pattern Jury Instructions (Criminal Cases), 013.1 (2020), *available at*  https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJury Instruction.pdf.  Furthermore, Judge Hall specifically explained the indictment charged five separate crimes, only Counts One and Two charged conspiracies, and Counts Three through Five charged substantive offenses.  CR 114-030, doc. no. 81, p. 12.

Particular to Count Four, Judge Hall charged Petitioner could only be found guilty if, *inter alia*, the facts proved beyond a reasonable doubt "the Defendant committed the crime of violence charged in Count 3 of the indictment."  Id. at 17.  Count Three charged the substantive Hobbs Act robbery of the Family Dollar business.  CR 114-030, doc. no. 1, pp. 3-4.  The instruction for Count Three never mentions the word conspiracy.  CR 114-030, doc. no. 81, pp. 15-16  Petitioner does not claim the instruction was incorrect or somehow did not apply to the charges in his indictment.  Rather, based on pure speculation, he suggests there is no way to know for certain the jury did not convict him on Count Four based on conspiracy to commit Hobbs Act robbery rather than as Judge Hall instructed.  To the contrary, the record reveals no ambiguity and establishes a properly instructed jury found Petitioner guilty of Count Four of the indictment based on the underlying crime of violence of the substantive Hobbs Act robbery

16

for which he was convicted on Count Three.  As such, <u>Davis</u> has no application to Petitioner's Count Four conviction, and there is no merit to Ground Two of the § 2255 motion.

### (c)    The Felon In Possession Conviction on Count Five Is Valid

### (i)    Petitioner's Conviction Is Valid Even After <u>Rehaif</u>

In <u>Rehaif v. United States</u>, 139 S. Ct.  2191 (U.S. 2019), the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." <u>Id.</u> at 2200. Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status element of § 922." <u>United States v. Rehaif</u>, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191.  For multiple reasons, Petitioner's <u>Rehaif</u> claim is without merit.

First, the Eleventh Circuit Court of Appeals has determined the Supreme Court's <u>Rehaif</u> decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law.  <u>In re Palacios</u>, 931 F.3d 1314, 1315 (11th Cir. 2019).  The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal.  <u>Id.</u> Therefore, <u>Rehaif</u> affords Petitioner no relief in this § 2255 proceeding.

Second, any <u>Rehaif</u> error was harmless.  It is long-settled that to obtain collateral relief, Petitioner must identify "a fundamental defect which inherently results in a complete miscarriage of justice, [or is] an omission inconsistent with the rudimentary demands of fair procedure." <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962).  On collateral review, relief cannot be granted unless there is "grave doubt" that the error "had substantial and injurious

effect or influence" on the outcome of the underlying proceedings.  Al-Amin v. Warden Ga. Dep't of Corr., 932 F.3d 1291, 1298 (11th Cir. 2019) (citations omitted), *cert. denied sub nom.* Al-Amin v. Ward, 140 S. Ct. 2640, No. 19-573, 2020 WL 1668291 (U.S. Apr. 6, 2020).  The Eleventh Circuit has explained that when applying the appropriate harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), "[i]f, when all is said and done, the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand."  Ross v. United States, 289 F.3d 677, 683 (11th Cir. 2002) (citations omitted).

Petitioner cannot shoulder his heavy burden because the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearm forming the basis of his § 922(g) conviction in Count Five.  Initially, the Court quickly dispenses with the argument a Rehaif error is a jurisdictional issue that cannot be waived.  (Doc. no. 11, p. 5.)  The Eleventh Circuit has ruled failure to include the mens rea element of a § 922(g) felon in possession charge is a non-jurisdictional defect.  See United States v. Moore, 954 F.3d 1322, 1334-35 (11th Cir. 2020); United States v. McClellan, 958 F.3d 1110, 1118 (11th Cir. 2020).

Moreover, Petitioner's claimed lack of knowledge is belied by the information in the indictment listing five of Petitioner's prior felony convictions.  CR 114-030, doc. no. 1, p. 5. Furthermore, Petitioner stipulated prior to trial that he "was a convicted felon as charged in the indictment." Id., doc. no. 68.  The PSI additionally detailed Petitioner's prior criminal history, which set forth multiple felony convictions, (PSI ¶¶ 40-52), including prior felon in possession convictions for which he was ordered to serve nine years in prison, (PSI ¶ 47-48).  Moreover, as discussed in detail herein, at sentencing, Petitioner's prior felony record was hotly contested with respect to the calculation of his Guidelines sentence.  Petitioner never contested he had

accrued the felony convictions but instead contested how they were used to calculate his sentence.

Petitioner also never objected or otherwise expressed any surprise or confusion over his status as a felon.  "[W]here the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a Rehaif error does not affect his substantial rights."  McClellan, 958 F.3d at 1119 (citing United States v. Reed, 941 F.3d 1018, 1022 (11th Cir. 2019)); see also United States v. Ward, 796 F. App'x 591, 600-01 (11th Cir. 2019) (per curiam) (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm).

Lastly, to the extent Petitioner attempts to extend Rehaif from requiring a showing the defendant belonged to the relevant category of persons barred from possessing a firearm to knowing the firearm was used in interstate commerce, (doc. no. 11, p. 11), that, too, has no merit.  Contrary to the signed stipulation the firearms listed in the indictment "had been shipped and transported in interstate or foreign commerce before October 10, 2013," (CR 114-030, doc. no. 69), Petitioner now asserts he told counsel he had no knowledge the firearm he possessed affected interstate commerce.  (Id.)  However, as the Supreme Court explained in Rehaif, the "in or affecting commerce" statutory requirement is the "jurisdictional element" of the crime, and "[b]ecause jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption in favor of scienter."  Rehaif, 139 S. Ct. at 2196.  Therefore a § 922(g) conviction does not require proof Petitioner knew his possession of the firearm had an effect on interstate commerce.  See United States v. Wright, 607 F.3d 708, 715-16 (11th Cir. 2010) (citation omitted) (requiring

government prove "minimal nexus" to interstate commerce to satisfy "in or affecting commerce" element of § 922(g) charge). There is no merit to Ground Three (a).

Petitioner filed a motion to expand the record to include his affidavit asserting he told Mr. Stewart he did not know the firearm he possessed affected interstate commerce but was told by counsel there was no mens rea element to a § 922(g) charge, a position affirmed by the prosecutor and the Court. (Doc. no. 12.) Respondent did not object to adding the affidavit to the record, (doc. no. 13), and the motion should be **GRANTED**, (doc. no. 12). However, as discussed above, Petitioner's argument concerning a mens rea element with respect to the in or affecting interstate commerce requirement is without merit.

### (ii)      Petitioner's Sentence Is Valid Even After <u>Stokeling</u>

As set forth in the PSI, the statutory minimum for Petitioner's conviction on Count Five was fifteen years. PSI ¶ 74 (citing 18 U.S.C. §§ 922(g)(1) and 924(e)). Petitioner maintains, in light of <u>Stokeling v. United States</u>, 138 S. Ct. 1438 (U.S. 2018), his conviction for strong-arm robbery under Florida law was improperly counted against him as one of three violent felonies to qualify him for sentencing as an armed career criminal under § 924(e). (Doc. no. 1, p. 18, 26-27.) The <u>Stokeling</u> opinion cited by Petitioner is the opinion granting a writ of certiorari. The substantive <u>Stokeling</u> opinion, 139 S. Ct. 544 (U.S. 2019), determined robbery under Florida law qualifies as a violent felony under the elements clause of the ACCA and can serve as a predicate offense for an enhanced sentence. "Because the term 'physical force' in the ACCA encompasses the degree of force necessary to commit common-law robbery, and because Florida robbery requires that same degree of 'force,' Florida robbery qualifies as an ACCA-predicate offense under the elements clause. <u>Stokeling</u>, 139 S. Ct. at 555.

The <u>Stokeling</u> opinion examines the Florida Statute governing robbery, Fla. Stat. § 812.13, explaining the first paragraph defines robbery as "The taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting fear."   <u>Id.</u> at 554 (citing Fla. Stat. § 812.13(1)).   Paragraph two of the statute creates three types of robbery, and subparagraph two(c) applies to "strong-arm robbery," defined as a robbery in which "the offender carried no firearm, deadly weapon, or other weapon." <u>Gonzalez v. State</u>, 125 So. 3d 373, 373 & n.1 (Fla. Dist. Ct. App. 2013).   Thus, strong-arm robbery is a type of Florida robbery, which the Supreme Court has ruled is a violent felony under the elements clause of the ACCA. <u>Stokeling</u>, 139 S. Ct. at 555.  Moreover, the Eleventh Circuit has repeatedly ruled, both before and after <u>Stokeling</u>, Florida robbery qualifies as a violent felony under the ACCA. <u>United States v. McClures</u>, 817 F. App'x 814, 816 (11th Cir. 2020); <u>United States v. Casamayor</u>, 721 F. App'x 890, 897 (11th Cir. 2018) (collecting cases).

Even if there had been merit to this claim, any error would have been harmless, because as discussed herein in detail, Petitioner's status as a career offender under the Guidelines, not as an armed career criminal under the ACCA, established Petitioner's sentence. PSI ¶ 55, 75; Sent. Tr. 22, 25.  Moreover, the probation officer identified, and Judge Hall accepted, several other convictions which could have served as predicate convictions under the ACCA, (Sent. Tr. 26-27), so removal of the strong-arm robbery to which Petitioner objects would not be determinative.  There is no merit to Ground Three (b).

### C.   Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500,

505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690. "Strickland permits attorneys to choose between viable avenues of defense, and attorneys are not ineffective for making a reasonable choice to take one avenue to the exclusion of another, or for selecting a reasonable course without considering some other, equally reasonable course. LeCroy v. United States, 739 F.3d 1297, 1313 (11th Cir. 2014).

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We

ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Moreover, "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client." United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (per curiam) (citing Strickland, 466 U.S. at 692-93); see also United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

Here, Petitioner's ineffective assistance of counsel claims are based on the substance of the claims raised and rejected above regarding (1) use of Petitioner's strong-arm robbery conviction as a predicate offense for an ACCA-enhanced sentence; and (2) an allegedly improper jury instruction creating the possibility of conviction on Count Four based on a conspiracy charge rather than the substantive Hobbs Act robbery conviction for Count Three.

For the reasons explained in detail above, there is no merit to those claims.  Counsel cannot be ineffective for failing to raise a meritless claim.  <u>Nyhuis</u>, 211 F.3d at 1344; <u>Winfield</u>, 960 F.2d at 974.  For the sake of completeness, the Court notes Petitioner alleges Mr. Stewart failed to object at sentencing to the ACCA enhancement under § 924(e).  The record reflects Mr. Stewart did object at sentencing, (Sent. Tr. 22-26), and appealed application of the career offender enhancement - the actual issue establishing Petitioner's Guidelines range - to the Eleventh Circuit, <u>Weaver</u>, 760 F. App'x 753-55.

Accordingly, all of Petitioner's ineffective assistance claims fail, and Ground Four provides no basis for relief.

### C.      The Motion to Amend Should Be Denied

After Respondent's motion to dismiss had been fully briefed, Petitioner filed a motion to amend his § 2255 motion, signed June 14, 2020, and docketed on June 18, requesting to add a new claim, in light of <u>United States v. Eason</u>, 953 F.3d 1184 (11th Cir. 2020), that he should be resentenced without application of the career offender provision of U.S.S.G. § 4B1.2(a)(1).  (Doc. no. 15.)  In <u>Eason</u>, the Eleventh Circuit ruled Hobbs Act robbery does not support a sentencing enhancement for a defendant who qualifies as a "career offender" under § 4B1.1(a) because Hobbs Act robbery does not qualify as a "crime of violence" as defined in U.S.S.G. § 4B1.2(a).  953 F.3d at 1194-95.  Thus, Petitioner maintains his career-offender enhancement under the Guidelines is invalid because it was based on his current conviction for Hobbs Act robbery as a crime of violence under U.S.S.G. § 4B1.2.  The government opposes the motion to amend.  (Doc. no. 16.)  Petitioner filed a reply in support of his motion to amend and requested permission to file additional briefing in support of his

motion.  (Doc. no. 18.)  As explained below, the motion to amend and the motion to file additional briefing should be **DENIED**.

### 1.    Standard for Amending

The Federal Rules of Civil Procedure apply to proceedings for habeas corpus "to the extent that the practice in those proceedings:  (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."  Fed. R. Civ. P. 81(a)(4).  Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Furthermore, both the Supreme Court and the Eleventh Circuit have held Federal Rule of Civil Procedure 15 applicable to requests to amend § 2255 motions.  See Mayle v. Felix, 545 U.S. 644, 654 (2005) (citing 28 U.S.C. § 2242); Pruitt v. United States, 274 F.3d 1315, 1317-19 (11th Cir. 2001).  Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

Under Rule 15(a)(1)(A), a party may amend his pleading once as a matter of course within twenty-one days after service.  Petitioner's motion to amend - filed over nine months after filing the original motion nearly seven months after Respondent's motion to dismiss had been fully briefed – does not fall under the rubric of Rule 15(a)(1)(A).  Thus, he can only amend with leave of court:  "[A] party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Respondent does not consent, and thus the Court turns to its determination on whether Petitioner's amendment should be allowed.

As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely.  Foman v. Davis, 371 U.S. 178, 182 (1962); Wedemeyer v. Pneudraulics, Inc., 510 F. App'x 875, 878 (11th Cir. 2013) (*per curiam*).  That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it."  Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008).  "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment."  Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005) (*per curiam*) (quoting Foman, 371 U.S. at 182).

As one court has explained in the context of affirming the denial of a request to amend in a § 2255 case, a petitioner who "has had ample opportunity to present his case to the Court . . . cannot simply raise new claims as they occur to him."  United States v. Burbage, 280 F. App'x 777, 782 (10th Cir. 2008); cf. McCleskey v. Zant, 499 U.S. 467, 485 (1991) ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." (citation omitted)).  This is particularly true where a party has been put on notice that his claims are meritless and then attempts to introduce new theories of obtaining relief.  See Andrx Pharms., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1236-37 (11th Cir. 2005).  Moreover, a motion to amend that seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief.  See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (ruling that futility includes proposed amendments that fail as a matter of law); Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir.

2007).  Because the proposed new claim is untimely and/or cannot form the basis for relief, the motion to amend should be denied.

### 2.    The New Claim Is Untimely

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

> 1.    the date on which the judgment of conviction becomes final;
>
> 2.    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> 3.    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> 4.    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The Eleventh Circuit Court of Appeals affirmed Petitioner's convictions and sentences on January 10, 2019.  Weaver, 760 F. App'x at 755.  Although he did not pursue his direct appeal any further, Petitioner had ninety days to file a petition for writ of certiorari with the United States Supreme Court, (Sup. Ct. R. 13.1), meaning that absent one of the exceptions in § 2255(f)(2)-(4), he had one year from April 2019 to file § 2255 claims.  See Clay v. United States, 537 U.S. 522, 527 (2003) (determining finality attaches to conviction when time for filing certiorari petition expires).  Thus, the motion to amend submitted in June 2020 is untimely.  Petitioner nonetheless argues his motion to amend is timely because it was filed within one year of the Eleventh Circuit's opinion in Eason.  As explained below, the ruling in

Eason does not apply to Petitioner, but even if it did, Eason is not a Supreme Court decision that has been made retroactively applicable to cases on collateral review such that the date of the decision would trigger a new statute of limitation deadline.  See Smith v. United States, Case Nos. 2:17-cv-8045-KOB; 2:07-cr-523-KOB-GMB, 2020 WL 2132048, at *6 (N.D. Ala. May 5, 2020) (citing § 2255(f)(3)), *appeal filed*, No. 20-12981 (11th Cir. Aug. 7, 2020).

An otherwise untimely request for relief under § 2255 may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred. Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003).  The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both.  See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).  Moreover, the petitioner seeking application of equitable tolling must show specific facts to support his claim of extraordinary circumstances and due diligence.  Akins v. United States, 204 F.3d 1086, 1089-90 (11th Cir. 2000).  Here, Petitioner makes no attempt to shoulder his heavy factual burden on entitlement to equitable tolling, relying instead on the assertion his new claim relates back to his original § 2255 motion.  (Doc. no. 15, p. 4; doc. no. 17.)

Consideration of an otherwise untimely request for § 2255 relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin, 569 U.S. at 392 (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). As explained above in Part II(B)(1), the actual innocence exception is exceedingly narrow in scope and must encompass factual innocence, not legal insufficiency. McQuiggin, 569 U.S. at 394-85; Bousely, 523 U.S. at 623-24. Here, Petitioner has not presented any evidence, much less new evidence, to suggest that he no reasonable juror would have convicted him. His proposed new claim is based on a legal argument addressing only his sentence, not his guilt of any underlying crime of conviction.

As the proposed amendment is untimely, the Court turns to whether the amendment could be considered timely by relation back to the date of filing the original § 2255 motion.

### 2.      The New Claim Does Not Relate Back to the Original § 2255 Motion

Under Federal Rule of Civil Procedure 15(c), an amended claim relates back to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence set out or attempted to be set out -- in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) is narrow; it does not contemplate the addition of "an entirely new claim based on a different set of facts." Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (citing Pruitt, 274 F.3d at 1318). Thus, "to relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." Id. at 1215 (citing Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000)). As the Eleventh Circuit has explained:

> The key consideration is that the amended claim arises from the same
> conduct and occurrences upon which the original claim was based.  This may
> be the case even if one or both claims do not explicitly state supporting facts.
> When the nature of the amended claim supports specifically the original claim,
> the facts there alleged implicate the original claim, even if the original claim
> contained insufficient facts to support it.  One purpose of an amended claim is
> to fill in facts missing from the original claim.

Dean v. United States, 278 F.3d 1218, 1222 (11th Cir. 2002) (per curiam).  In other words, at

issue here is whether the proposed amended claim is merely an attempt to expand upon the

original claims, or if the amend claims relies upon different facts.

Petitioner's proposed new claim is that his career-offender enhancement under the

Guidelines is invalid because it was based on his current conviction for Hobbs Act robbery as

a crime of violence under U.S.S.G. § 4B1.2.  That claim is materially different from the original

claims, discussed in detail above, challenging the substantive bases for his convictions and his

eligibility for an enhancement as an armed career criminal under the ACCA based on his

§ 922(g) conviction in Count Five.  As originally argued, Petitioner contended his Florida

conviction for strong-arm robbery did not qualify as a predicate violent felony under § 922(e).

His argument did not concern a Guidelines calculation based on his federal conviction for

Hobbs Act robbery.

Indeed, Petitioner's attempt to link his proposed new claim to his original motion

highlights that, while he believes it has always been his position Hobbs Act robbery does not

qualify as a crime of violence for purposes of a Guidelines career offender enhancement, he

cites to proceedings occurring prior to filing his original § 2255 motion, not to briefing filed

in these proceedings.  (See doc. no. 17, pp. 2-3.)  At most, Petitioner included a one-sentence

footnote in his challenge to his § 924(c) conviction on Count Four stating he "preserves his

argument and asserts here Hobbs Act robbery is not a crime of violence." (Doc. no. 1, p. 23

n.4.)   Of course, whether Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A) or as a crime of violence under U.S.S.G. § 4B1.2 are entirely different questions, as the Eleventh Circuit specifically recognized in Eason:

> Section 924(c)'s elements clause is broader than U.S.S.G. § 4B1.2(a)(1) because it reaches the use, attempted use, or threatened use of force against property. Compare 18 U.S.C. § 924(c), with U.S.S.G. § 4B1.2(a)(1).   "There is nothing incongruous about holding that Hobbs Act robbery is a crime of violence for purposes of ... § 924(c)(3)(A), which includes force against a person *or* property, but not for purposes of U.S.S.G. § 4B1.2(a)(1), which is limited to force against a person."

Eason, 953 F.3d at 1191.

A challenge to the use of a Hobbs Act conviction based on an interpretation of the § 924(c) statute in Davis is not related to an argument concerning an interpretation of the Sentencing Guidelines, as was the focus in Eason.   The facts underlying Petitioner's original § 2255 motion and his proposed new claim are materially different and do not relate back to the original § 2255 motion.   As succinctly summarized by Respondent, "[T]he proposed new claim disputes a different component of the sentence on a different legal theory based on a different crime that [Petitioner] committed at a different time."   (Doc. no. 16, p. 5.)

Therefore, the motion to amend should be denied because the new claim is untimely. See Oliveiri v. United States, 717 F. App'x 966, 967-98 (11th Cir. 2018) (*per curiam*) (recognizing futility of amendment where new claim, although arising from same proceedings as claims in original § 2255 motion, was not tied to same core of operative facts); Williams v. United States, Nos. 3:17-cv-473-J-34PDB, 3:15-cr-54-J-34PDB, 2020 WL 2097979, at *9-10 (M.D. Fla. May 1, 2020) (denying motion to amend where new claim did not arise from same core facts as timely § 2255 claims).

### 3.     Even If the Proposed New Claim Were Timely, It Affords No Basis for Relief

Even if Petitioner were allowed to bring his proposed new claim, he would not be entitled to relief.  First, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack.  Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*).  Second, 18 U.S.C. § 3553(a)(4)(A) provides a defendant shall be sentenced under the version of the Guidelines in effect on the date of sentencing.  The decision in Eason, upon which Petitioner relies, interprets language of the Guidelines that was not in effect at the time of Petitioner's sentencing in December 2014.

> We readily acknowledge that the career offender guideline was designed to punish harshly repeat offenders and that Hobbs Act robbery historically has fallen within the "crime of violence" definition.  But we must bear in mind that until the 2016 amendments to the Guidelines, "crime of violence" was defined in three ways—the elements clause, the enumerated offenses, *and* a so-called "residual clause," capturing any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2) (amended 2016). The residual clause easily encompassed offenses like Hobbs Act robbery.  But since the residual clause was removed from the Guidelines in 2016, the "crime of violence" definition no longer captures Hobbs Act robbery. *See* 83 Fed. Reg. 65400, at *65400, 65411-12 (Dec. 20, 2018) (discussing the "concern that . . . Hobbs Act robbery . . . no longer constitute[s] a 'crime of violence' under § 4B1.2, as amended in 2016. . . .").

Eason, 953 F.3d at 1195.  The Supreme Court in Beckles v. United States, 137 S. Ct 886, 897 (U.S. 2017), ruled the residual clause in the career offender enhancement, U.S.S.G. § 4B1.2(a), was not void for vagueness.  Thus, it does not appear Petitioner, even if he were allowed to bring his proposed new claim, would benefit from the Eason decision issued on a different set of Guidelines than were in effect when he was sentenced.

For the sake of completeness, the Court also notes the proposed new claim is also procedurally defaulted for the reasons stated in Part II(B)(1)&(2) because it was available, but not raised, on direct appeal.  Petitioner's reliance on Rosales-Mireles v. United States, 138 S. Ct. 1897 (U.S. 2018), is a misguided attempt to persuade the Court his claim must be heard because his alleged Guidelines calculation error "undermines the fairness, integrity, or public reputation of the judiciary proceedings."  (Doc. no. 17, p. 2.)  Not only is Rosales-Mireles a case heard on direct appeal, not collateral review, but Petitioner has not shown his sentence was incorrect, let alone the calculation was plain error, as in Rosales-Mireles.  138 S. Ct. at 1907.  Moreover, when a federal defendant sentenced below the statutory maximum, as was Petitioner, alleges a sentencing error but does not prove actual innocence or vacatur of a prior conviction, the demanding miscarriage of justice exception is not satisfied.  Spencer, 773 F.3d at 1139.

Thus, even if the new claim were not untimely, it should not be allowed as an amendment because it affords Petitioner no relief.  See Coventry First, LLC, 605 F.3d at 870; Cockrell, 510 F.3d at 1310.  Because the claim is futile, there is no need for additional briefing, and the motion to file an additional reply brief in support of amendment should be denied.

## III.   CONCLUSION

For the reasons set forth above, the motion to expand the record be **GRANTED**, (doc. no. 12), the motions to amend and for leave to file an additional reply brief in support of amendment be **DENIED**, (doc. nos. 15, 18), the motion to dismiss be **GRANTED**, (doc. no.

8), the § 2255 motion be **DISMISSED** without appointing counsel, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 2nd day of October, 2020, at Augusta, Georgia.

_____

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA